# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON CHAGA, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| SIMON'S AGENCY INC., | : | **NO. 21-4110** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                    FEBRUARY 23, 2023

Apparently believing that too many choices means no choice, Jason Chaga, on behalf of himself and similarly situated individuals, accuses Simon's Agency Inc. of violating the Fair Debt Collection Practices Act when it issued him a debt collection letter with two different addresses on it. Mr. Chaga, somehow immobilized by confusion because the letter listed two addresses for Simon's, decided not to communicate by mail or phone to inquire or clarify how he could dispute or pay his debt. Simon's moved for summary judgment. Because Mr. Chaga has no standing to bring this suit, his complaint is dismissed without prejudice for lack of subject matter jurisdiction.

### BACKGROUND

Around August 10, 2021, a creditor, Crozer (Cerner), placed Jason Chaga's account with Simon's Agency Inc. for collection of a debt. Simon's sent Mr. Chaga a debt collection letter, dated August 11, 2021, seeking payment of $64.73, the balance owed to Crozer (Cerner).

The letter included two addresses. The first address was the remittance address of Simon's, located in the top left and bottom right corners of the detachable lower portion, or coupon, of the letter:

Simon's Agency Inc.
PO Box 5026
Syracuse, NY 1322-5026

1

Pl.'s Ex. A, Doc. No. 1-4; Def.'s Ex. 1 ¶ 13, Doc. 13-2. The second was the headquarters address of Simon's, located in the top left corner of the letter:

> Simon's Agency Inc.
> 4963 Wintersweet Drive
> Liverpool, NY 13088

Pl.'s Ex. A, Doc. No. 1-4; Def.'s Ex. 1 ¶ 14, Doc. 13-2. The letter does not specify which address to use when sending written disputes. The letter also provided the website address and two telephone numbers for Simon's.

According to Simon's, both the Syracuse remittance and Liverpool headquarters addresses can process correspondence received at either address, including requests for validation and disputes concerning a financial obligation, as well as any mailed payments. On the "Frequently Asked Questions" page on the Simon's website, the Syracuse remittance address is listed under the subheading "Mail," while the Liverpool headquarters address falls under the subheading "Corporate Address." Pl.'s Ex. A; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ¶ 9(a), Doc. No. 19. The webpage also states that "[p]ayments in cash can be made in-person during normal business hours at our corporate headquarters: 4963 Wintersweet Drive, Liverpool, NY 13088." Pl.'s Ex. A.

The parties agree that the agency never received any payments or written correspondence from Mr. Chaga at either the Syracuse remittance or Liverpool headquarters addresses or via electronic means, nor did Mr. Chaga make any telephone calls to the company regarding his account. Mr. Chaga argues that the confusion caused by the letter having the two addresses resulted in his inability to dispute the debt, his loss of his validation rights under the FDCPA, and the additional costs of lost time, money, and effort spent reviewing the letter and fear of losing his validation rights.

Mr. Chaga now seeks to bring a class action under the FDCPA against Simon's, alleging that the two mailing addresses "confused" Mr. Chaga regarding "how to properly dispute the debt" or where to send any written disputes. Compl. ¶¶ 11, 33. Mr. Chaga claims that he was "misled to his detriment by the statements in the dunning letter, and relied on the contents of the letter to his detriment" and that the letter violated 15 U.S.C. §§ 1692e, 1692f, and 1692g. Compl. ¶¶ 43, 46–60. Simon's has moved for summary judgment, which Mr. Chaga opposes. The Court heard oral argument, and the motion is ripe for decision.

**LEGAL STANDARDS**

### I.    Article III Standing

Article III of the Constitution limits federal court jurisdiction to cases and controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A court may determine at any time that it lacks subject matter jurisdiction, at which point it must dismiss the case without prejudice. Fed. R. Civ. P. 12(h)(3). The Court itself can focus on jurisdiction without the necessity of there being a motion from a party. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

Attacks on subject matter jurisdiction come in two variations: facial and factual. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). Facial attacks concern "an alleged pleading deficiency." *Id.* (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). Factual attacks, on the other hand, represent an "actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Id.* (quoting *Atkinson*, 473 F.3d at 514). A factual attack on subject matter jurisdiction results in certain procedural consequences: (1) the district court need not accept a plaintiff's allegations as true; (2) the burden of proof falls on the plaintiff; and (3) the court has authority to make factual findings decisive to the issue. *Id.*

The Supreme Court has rejected the idea "that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. The injury-in-fact element of Article III standing requires the plaintiff to allege that the injury is both "concrete and particularized." *Id.* at 334. Concrete harms are "real, and not abstract." *Id.* at 340 (internal quotations omitted). Although "Congress may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion,* 141 S. Ct. at 2205 (internal quotation marks omitted). In making a standing determination, courts also "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." *Spokeo*, 578 U.S. at 340–41.

While the Third Circuit Court of Appeals has not yet issued an opinion regarding concrete injury on the basis of misleading communications of debt collectors, other courts of appeals have. *Huber v. Simon's Agency, Inc.*, No. 19-cv-1424, 2022 WL 1801497, at *3 (E.D. Pa. June 2, 2022)

4

(collecting cases). Injury-in-fact may be found where the allegedly deceptive letter "leads a plaintiff to pay extra money, affects [his] credit, or otherwise alters [his] response to a debt." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021). "Adequacy of informational harms for standing purposes therefore turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter; *confusion itself is not enough*." *Huber*, 2022 WL 1801497, at *4 (emphasis added); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 867 (6th Cir. 2020) (finding no injury in fact where plaintiff alleged undue anxiety that he might be subject to legal action because"[t]he cause of that anxiety falls squarely on [plaintiff] because he chose not to pay his debts—and now fears the consequences of his delinquency").

Misleading communications may cause concrete harms sufficient to establish Article III standing under an analogue of fraudulent or negligent misrepresentation. *Madlinger v. Enhanced Recovery Co.*, No. 21-cv-154, 2022 WL 2442430, at *5–6 (D.N.J. July 5, 2022). In Pennsylvania, fraudulent misrepresentation consists of "(1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the reliance." *Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 550 (W.D. Pa. 2003). Negligent misrepresentation requires a showing of "(1) a misrepresentation of a material fact; (2) made when [the] defendant ought to have known its falsity; (3) with intent to induce another to act on it; and (4) which causes injury to a party acting in justifiable reliance on the misrepresentation." *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 544 n.14 (E.D. Pa. 2021). Hence, a key element of both common-law claims is reliance. *Rabinowitz v. Alltran Financial LP*, No. 21-cv-12756, 2022 WL 16362460, at *11 (D.N.J. Oct. 25, 2022).

## II.    Summary Judgment

For a court to grant summary judgment, the movant must prove "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To be "material," the fact must have the potential to "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute about that fact to be "genuine," there must be enough evidence such that a reasonable jury could find for the non-movant on that fact. *Id.* "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court does not itself "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court looks for "sufficient evidence" on which a reasonable jury could decide for the non-movant. *Id.*

However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. The non-moving party must present more than "bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

DISCUSSION

## I. Mr. Chaga Lacks Standing to Bring His Claims

Simon's seeks summary judgment on standing grounds, arguing that Mr. Chaga has not suffered a concrete and particularized injury in fact. Simon's jurisdictional challenge is a factual attack, so the Court may weigh the evidence submitted and need not accept Mr. Chaga's allegations as true.

Mr. Chaga fails to show any concrete harm that is closely related to an analogous common-law tort. Rather than assert any monetary or reputational harm, Mr. Chaga claims that his injuries include the loss of his validation rights under the FDCPA and fear of losing those rights, loss of time spent reviewing the letter, and confusion concerning where to send a written dispute. These claims are too metaphysical to usher them past the threshold of Article III standing. *See, e.g., Madlinger*, 2022 WL 2442430, at *6 (finding allegations of confusion caused by four addresses contained in one debt collection letter insufficient to confer standing); *Adler v. Penn Credit Corp.*, No. 19-cv-7084, 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (finding at summary judgment that vague allegations of confusion and a resulting headache from debt collection letter with multiple addresses insufficient to confer standing); *Schmelczer v. Penn Credit Corp.*, No. 20-cv-2380, 2022 WL 862254, at *7 (S.D.N.Y. Mar. 23, 2022) (concluding at summary judgment that plaintiff lacked standing where he claimed only that a payment letter had caused him to be confused and concerned). Mr. Chaga also does not argue that he actually sought to dispute the debt, nor does he explain how his failure to write to Simon's via any address shows justifiable reliance on the letter. While Mr. Chaga has established his inaction following receipt of the letter, he does not explain how that inaction was a *consequence* of receiving the letter. *Huber*, 2022 WL 1801497, at *4; *Rabinowitz*, 2022 WL 16362460, at *11 ("This general allegation of confusion, without any allegation of reliance, is insufficient to confer standing."). He points to

nothing in the letter that cajoled him into a state of complacency or to otherwise "sit back and do nothing."

Mr. Chaga leans on *Thome v. Sayer Law Group, P.C.*, 567 F. Supp. 3d 1057, 1063 (N.D. Iowa 2021), to support his argument, which he posits is persuasive as to how a plaintiff's confusion and relinquishment of validation rights by itself is sufficient to establish an injury in fact. But the facts in *Thome* are distinguishable from the facts before the Court now. For one, the plaintiff in *Thome* received a letter regarding her mortgage with expressly contradictory language that said she could dispute the debt within 14 days before foreclosure proceedings, while an attachment said she had 30 days to dispute the debt. *Id.* at 1063. And unlike Mr. Chaga, the plaintiff in *Thome* alleged fear of losing her home, struggled with mental health, and reasonably and detrimentally relied on the debt collector's misrepresentation by choosing not to obtain representation to dispute the debt because she believed she did not have enough time to do so. *Id.* at 1063, 1075. Mr. Chaga *claims* he detrimentally relied on the debt collection letter, but again, it is unclear how not sending a letter to either of the two addresses to dispute his debt shows detrimental reliance because it is simply not a reasonable response to the alleged dilemma, *i.e.*, there was no stated option to stay silent.

Mr. Chaga has not met his burden to establish Article III standing, and thus the Court lacks jurisdiction to hear this case. The Court will dismiss the case without prejudice. *See Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 119 (3d Cir. 2019).

## II. Mr. Chaga Has Not Shown Violations of the FDCPA

Even if this Court found Article III standing, Mr. Chaga could not overcome the summary judgment challenge because in any case he has not shown that the debt collection letter violated any provision of the FDCPA. "The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors." *Riccio v. Sentry Credit, Inc.*,

954 F.3d 582, 585 (3d Cir. 2020). Courts "construe [the FDCPA's] language broadly, so as to effect its purpose" as "a remedial statute." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).

Under the FDCPA, courts view the debt collection communications from the perspective of the "least sophisticated debtor." *Id.* The standard is a relatively low one: "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Id.* at 454. Still, the standard is not so low as to reward a debtor's "bizarre or idiosyncratic interpretations" of communications covered by the FDCPA, instead "presuming a basic level of understanding and willingness to read with care." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000); *see also Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (establishing that the least sophisticated consumer does not have "the astuteness of a 'Philadelphia lawyer'" but "is neither irrational nor a dolt"). "The standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jenson v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015).

A plaintiff seeking to win on an FDCPA claim must prove four elements: "(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The only element at issue here is the fourth element—whether Simon's violated §§ 1692e, 1692e(10), 1692f, and/or 1692g of the FDCPA.

Mr. Chaga claims that the Simon's letter violated §§ 1692e, 1692e(10), 1692f, and 1692g because Simon's "deceptively and/or misleadingly provid[ed] multiple addresses and [did] not identify[ ] which one should be used to dispute the debt." Compl. ¶¶ 46–60.

### A.  The Debt Collection Letter Did Not Violate §§ 1692e and 1692e(10) of the FDCPA

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Subsection 10 contains a catchall provision within § 1692e. *See* 15 U.S.C. § 1692e(10) (establishing that "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is a violation of the FDCPA).

Simon's argues that there is no FDCPA claim where an individual could have sent a dispute to either address and Simon's would have processed the correspondence. Furthermore, it avers, the formatting of the letter, with the detachable portion of the letter containing the remittance address twice, makes clear to the least sophisticated debtor to which location disputes, as well as payments, are to be submitted.

Mr. Chaga retorts that courts have "rejected" other letters with multiple addresses as being in violation of the FDCPA. *See, e.g., Pinyuk v. CBE Grp., Inc.,* No. 17-cv-5753, 2019 WL 1900985, at *7 (E.D.N.Y. Apr. 29, 2019); *Musarra v. Balanced Healthcare Receivables, LLC,* No. 19-cv-5814, 2020 WL 1166449, at *6 (E.D.N.Y. Mar. 11, 2020); *Adler v. Penn Credit Corp.,* No. 19-cv-7084, 2020 WL 4474624, at *6 (S.D.N.Y. Aug. 3, 2020); *Schmelczer v. Penn Credit Corp.,* No. 20-cv-2380, 2021 WL 325982, at *7 (S.D.N.Y. Feb. 1, 2021); *Rhee v. Client Servs., Inc.,* No. 19-cv-12253, 2020 WL 4188161, at *7 (D.N.J. July 21, 2020). The opinions to which Mr. Chaga cites are inapposite to the Court's decision at this stage of the litigation. *See Pinyuk,* 2019 WL 1900985, at *1 (considering argument in the context of a motion to amend the complaint);

*Musarra*, 2020 WL 1166449, at *2, *6 (ruling on defendant's motion to dismiss); *Adler*, 2020 WL 4474624, at *6 (analyzing argument at motion to dismiss stage); *Schmelczer*, 2021 WL 325982, at *7 (S.D.N.Y. Feb. 1, 2021) (ruling on motion to dismiss); *Rhee*, 2020 WL 4188161, at *7 (ruling on motion to dismiss). The standards applicable to these motions are different than the summary judgment standard, and now in this case there is a heavier burden on Mr. Chaga to produce "specific facts showing that there is a genuine issue for trial." *Bacalzo v. Credit Control, LLC*, No. 20-cv-16904, 2022 WL 2063461, at *5 (D.N.J. June 7, 2022).

The Simon's debt collection letter did not use deceptive means to collect Mr. Chaga's debt. It is reasonable that the least sophisticated debtor would have seen, from the numerosity and placement of the addresses, that the appropriate address for correspondence would be the remittance address. The remittance address is used twice; the headquarters address is used once. The remittance address is the only address that appears on the detachable coupon of the debt collection letter. *Bacalzo*, 2022 WL 2063461, at *4 (finding that where the detachable coupon contained one address three times, a consumer would send correspondence to that address).

Moreover, Mr. Chaga cannot overcome the facts presented by Simon's in an affidavit of its Vice President of Operations, Chad Jansen, namely that both the remittance address *and* the headquarters address would have processed a debt dispute communication had Mr. Chaga sent one. Simon's argues that disputes sent to either address are read and processed. Jansen Aff. ¶ 15. Mr. Chaga claims that Mr. Jansen's statement is rebutted by the FAQ on Simon's website, because the Syracuse remittance address is listed under the subheading "Mail" on the Simon's website but the Liverpool corporate headquarters address is listed for the making of payments in cash. Pl.'s Mem. in Opp'n to Summ. J., Doc. No. 19, at 24–25. Mr. Chaga argues that "[c]learly, the website

11

directing all correspondence to the Syracuse Address means that any written disputes received at the Liverpool address would not have been processed." *Id*. at 25.

Mr. Chaga's strained reading of the FAQ on the Simon's website does not create a genuine dispute. "[D]isputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995). A rational person could not conclude that Mr. Chaga is correct that the Simon's FAQ establishes that his payment would not have been processed at one of the two locations. The FAQ does not state that *only* one of the addresses would process a written dispute, and Mr. Chaga did not avail himself of further discovery or depositions on this specific issue to mount a more substantial challenge to the Simon's affidavit.

"A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008). Mr. Chaga has failed to offer evidence that the debt collection letter contained "inaccuracies" stemming from the inclusion of two different addresses, so the letter was not deceptive or misleading and therefore did not violate §§ 1692e or 1692e(10).

**B.  The Letter Did Not Violate § 1692g of the FDCPA**

Mr. Chaga also claims that the August 11, 2021 letter's failure to explain where written disputes should be sent overshadowed his notice rights under § 1692g of the FDCPA, but he fails to present a compelling argument showing a violation under this section of the statute, instead relying on the same facts he used in supporting his § 1692e claim.

Section 1692g(a) sets forth five items the debt collection letter must include as a validation notice:

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the
notice, disputes the validity of the debt, or any portion thereof, the debt will be
assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the
thirty-day period that the debt, or any portion thereof, is disputed, the debt collector
will obtain verification of the debt or a copy of a judgment against the consumer
and a copy of such verification or judgment will be mailed to the consumer by the
debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day
period, the debt collector will provide the consumer with the name and address of
the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a); *Riccio*, 954 F.3d at 585. Communications related to the debt collection "may

not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt."

15 U.S.C. § 1692g(b). "[T]he debt validation provisions of section 1692g were included by

Congress to guarantee that consumers would receive adequate notice of their rights under the law."

*Wilson*, 225 F.3d at 354. "[I]n order to comply with the requirements of section 1692g, more is

required than the mere inclusion of the statutory debt validation notice in the debt collection

letter—the required notice must also be conveyed effectively to the debtor." *Id.* A plaintiff can

show that the debt collection letter overshadows the validation notice in violation of § 1692(b) "if

it would make the least sophisticated consumer uncertain as to her rights." *Id.* The Third Circuit

Court of Appeals has held that whether language in a debt collection letter is overshadowing or

contradictory is a matter of law. *Id.* at 353 n.2.

Here, even though the debt collection letter contained two addresses and did not expressly

state where written disputes should be sent for processing, there was no overshadowing of the

validation notice. The letter contained language that effectively conveyed all the information

required by § 1692g(a), and Mr. Chaga does not suggest otherwise. While the letter included both

a Syracuse remittance and a Liverpool headquarters address, that fact alone does not mean that the

validation notice was overshadowed. Mr. Chaga has not alleged sufficient facts for a reasonable

juror to find that the least sophisticated debtor would be uncertain how to proceed when a debt collection letter contained two mailing addresses, a website, and a telephone number and would instead elect to do nothing to dispute the debt because he was paralyzed by the choices before him. *See, e.g.*, *Bacalzo*, 2022 WL 2063461, at *6 ("There are no facts establishing and it would be wholly unreasonable to find that the least sophisticated debtor, when presented with two mailing addresses – a P.O. Box (referenced four times in the letter) and a Street Address, a website, and telephone numbers, would simply do nothing if the person desired to dispute the debt."); *cf. Bernard v. Radius Glob. Sols., LLC*, No. 21-cv-3605, 2022 WL 1557270, at *3 (E.D. Pa. May 17, 2022) ("Courts have found . . . overshadowing when the validation notice is in fine print, in a different font from the rest of the letter, and on the back of the letter with nothing on the front alerting the consumer to the disclosure."). There is no violation of § 1692g here.

### C.   Mr. Chaga Has Not Established That the Letter Violated § 1692f of the FDCPA

Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt" and sets forth a non-exhaustive list of prohibited actions that would violate the statute. 15 U.S.C. § 1692f. Courts routinely hold "that § 1692f is a catch-all provision for conduct that is unfair, but is not specifically enumerated in any other section of the FDCPA." *Cohen v. Dynamic Recovery Sols.*, No. 16-cv-576, 2016 WL 4035433, at *5 (D.N.J. July 26, 2016). Courts also routinely dismiss claims under § 1692f where the plaintiff merely repeats the allegations it made pursuant to claims under other sections of the FDCPA. *Id*; *see also Gwiazda v. LVNV Funding, LLC*, No. 22-cv-698, 2022 WL 4280478, at *5 (E.D. Pa. Sept. 15, 2022).

In his complaint, Mr. Chaga has not alleged any conduct in relation to his § 1692f claim beyond that which he alleged in relation to his §§ 1692e and 1692g claims. His briefing in opposition to the Simon's summary judgment motion does not point to any evidence establishing unfair or unconscionable conduct under § 1692f. No reasonable juror could conclude that the

14

conduct of Simon's violated § 1692f, so Mr. Chaga's claim under this provision of the FDCPA would not survive summary judgment.

## CONCLUSION

Mr. Chaga has not established a concrete injury in fact, so he lacks Article III standing to bring this claim. Accordingly, the case is dismissed without prejudice for lack of standing. Simon's Motion for Summary Judgment is denied, but only because it is moot. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE